**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | NO. 5:24-CR-00122-KKC-MAS |
| ) | |
| **ROSENDO RODRIGUEZ-** ) | |
| **FUENTES,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION & ORDER**

The Indictment alleges that Defendant Rosendo Rodriguez-Fuentes ("Rodriguez-Fuentes") illegally re-entered the United States subsequent to an aggravated felony conviction in violation of 8 U.S.C. § 1326(a) and (b)(2). [DE 1]. The United States orally sought a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(A), arguing that this case involves a serious risk that Rodriguez-Fuentes will flee. [DE 10]. Rodriguez-Fuentes said otherwise, arguing that the United States cannot demonstrate a valid basis to have a detention hearing.

As discussed below, the Court will grant the government's motion and detain Rodriguez-Fuentes's. The United States demonstrated by preponderant evidence that he poses a serious risk of flight under § 3142(f)(2)(A). The United States also demonstrated that Rodriguez-Fuentes should be detained under the Brail Reform Act.

## I. BACKGROUND

At the hearing and through this opinion, the Court must address two issues: (1) whether the United States could obtain a detention hearing by showing that Rodriguez-Fuentes is a serious risk of flight; and, if it meets its burden (2) whether detention is proper under the § 3142(g) factors. At the hearing, the Court heard testimony from ICE Special Agent Nicholas Austin ("SA Austin"), proffer and argument from counsel, and was tendered a copy of the Pretrial Services Report ("PSR") prepared by the United States Probation Office.

## II. LEGAL STANDARD

### A. THE DETENTION MOTION

The government seeks detention under 18 U.S.C. § 3142(f)(2)(A), arguing that Rodriguez-Fuentes presents a "serious risk of flight." Before addressing whether detention is appropriate, the Bail Reform Act ("BRA") mandates a two-step inquiry. *United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 587 (E.D. Ky. 2023); *see also United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017). First, the Court must determine whether a detention hearing is even authorized under § 3142(f). Detention is not available in every case; rather, the Government must establish that at least one of the limited statutory grounds in § 3142(f)(1) or (f)(2) applies. *See United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) ("Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists."); *United States v. Hardon*, No. 98-1625, 1998 WL 320945, at *1 (6th Cir. June 4, 1998) (reversing detention where the government did not have

a § 3142(f) basis to move for detention).; *United States v. Byrd*, 969 F.2d 106, 109–10 (5th Cir. 1992) (same).

Here, the United States moved pursuant to § 3142(f)(2)(A). Consequently, it must prove by a preponderance of the evidence that the case involves a "serious risk [the defendant] will flee." *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *7 (M.D. Tenn. May 27, 2021); *Friedman*, 837 F.2d at 49; *United States v. Salgado*, No. 1:20-CR-35-HAB, 2020 WL 4747931, at *3 (N.D. Ind. Aug. 17, 2020). The preponderance of the evidence standard requires that the risk be substantial, rather than speculative or theoretical. *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1140 (noting that "serious risk of flight" requires more than a mere possibility of nonappearance) (citing *White*, 2021 WL 2155441 at *7).

If and only if the United States makes this preponderance showing, the Court will then proceed to the second step: conducting a full detention hearing under § 3142(e) and § 3142(g) to determine whether detention is warranted.

### B. DEFINING SERIOUS RISK OF FLIGHT UNDER § 3142(F)(2)(A)

To start, the Court examines what a "serious risk of flight" means on its face. The term "risk" generally denotes an element of uncertainty or probability, defined as "[t]he uncertainty of a result, happening or loss; [or] chance of injury, damage, or loss." *Black's Law Dictionary* (12th ed. 2024). The concept of flight, in turn, connotes intentional evasion, as *Black's* defines "flee" as "[t]o run away; to hasten off; . . . to try to evade a problem; . . . [t]o vanish; . . . [or] [t]o abandon or forsake." *Id.* Congress's deliberate use of the adjective "serious" to modify "risk of flight" further heightens the threshold, as "serious" is commonly understood to mean "weighty; important; . . .

[or] potentially resulting in death or other severe consequences." *Id.* Thus, a plain reading of § 3142(f)(2)(A) indicates that demonstrating a "serious risk" of flight requires more than speculation, negligence, or logistical challenges. If "serious" is understood to modify "risk," then a "serious risk that [a defendant] will flee" must entail more than mere uncertainty or the possibility of nonappearance. Instead, it demands a substantial showing that the defendant will take deliberate, voluntary action to flee to evade judicial oversight. *See Ailon-Ailon*, 875 F.3d at 1336 (holding that flight "involves voluntary action"). This interpretation aligns with well-established principles of statutory construction: courts must "resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997); *see also Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (courts have a "duty to refrain from reading a phrase into the statute when Congress has left it out").[1]

The Middle District of Tennessee's decision in *White* models this Court's understanding of what constitutes a serious risk of flight is under § 3142(f)(2)(A). In *White*, the government sought to revoke the magistrate judge's release order, arguing that the defendant posed a serious risk of flight. *White* acknowledged the "challenge in crafting a definition" of serious risk of flight, given the BRA's silence on the term.

---

[1] Courts often erroneously use the terms "risk of flight" and "risk of nonappearance" interchangeably. *White*, 2021 WL 2155441, at *9 (citing *United States v. Paniagua*, No. CR 5:18-074-DCR, 2019 WL 575378, at *2 (E.D. Ky. Feb. 12, 2019)). However, to do so ignores the BRA's structure and "intentional differentiation between the two concepts." *White*, 2021 WL 2155441, at *10 (citing Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 683 (2018)).

*White*, 2021 WL 2155441, at *10. But the Court stressed that that risk of flight connotes *intentional* evasion of prosecution, as opposed to risk of nonappearance, which may stem from various factors, including negligence, logistical issues, or misunderstanding of court obligations. *White*, 2021 WL 2155441, at *8. Applying this framework, *White* found that, while the government had generally offered evidence of a risk of flight based on his pending charges, prior failures to appear, and sentencing exposure,[2] the Court determined that that evidence alone did not amount to a *serious* risk of intentional evasion of judicial proceedings.

This Court has confronted this issue in *Cobix-Espinoza*, 655 F. Supp. 3d at 584, where it first distinguished "serious risk of flight" from the broader concept of "risk of nonappearance." *Id.* at 587–89. Several district courts have echoed this reading of the BRA. *United States v. Subil*, No. 2:23-CR-00030-TL, 2023 WL 3866709, at *4 (W.D. Wash. June 7, 2023); *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131,

---

[2] Although the relevant factual background was not thoroughly discussed in *White*, the Court has reviewed the district court's docket to contextualize the *White* decision. At the time the detention issue was live, a Criminal Complaint alleged Defendant Willie White and his three co-defendants committed bank larceny under 18 U.S.C. § 2113(b) and conspiracy to commit bank larceny under 18 U.S.C. § 371, offenses carrying a maximum of 10 years and 5 years in prison, respectively. Their scheme involved stealing heavy-duty trucks and forcibly breaching bank ATMs to steal large sums of cash. Surveillance footage captured two masked suspects in a stolen Chevrolet 2500 pickup truck using these methods to rob Wilson Bank & Trust in Murfreesboro, Tennessee, netting approximately $90,000. White, the registered owner of a black Dodge Durango seen casing the ATM beforehand, had previously been arrested for similar ATM larcenies in Texas and Oklahoma, where he admitted to learning the method through YouTube tutorials. At the time of the Tennessee thefts, he was on pretrial release for the Oklahoma charges. *See United States v. White*, No. 3:21-mj-04070, ECF No. 1 (M.D. Tenn. Apr. 27, 2021) (Criminal Complaint).

1138 (D. Idaho 2023); *United States v. Hernandez-Cerrato*, No. CR MJM-23-419, 2024 WL 1532748, at *3 (D. Md. Apr. 9, 2024); *United States v. Spirea*, No. 3:24-CR-00383-2-AN, 2024 WL 4903759, at *5 (D. Or. Nov. 27, 2024); *United States v. Khatiwada*, No. 3:24-MJ-1277, 2024 WL 4906487, at *6 (M.D. Tenn. Nov. 27, 2024).

After *White*, *Figueroa-Alvarez* identified four key (although not exhaustive) considerations for a § 3142(f)(2)(A) inquiry: (1) the defendant's incentive to flee, (2) the ability to flee, (3) ties to the jurisdiction and the United States, and (4) reliability and trustworthiness. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1140 (citing *Gouldin*, *supra*, at 703–04.). Several courts have since followed this framework. *See United States v. Erazo-Calix*, No. 1:24-CR-00150-AKB, 2024 WL 4505038, at *3 (D. Idaho Oct. 16, 2024) (adopting *Figueroa-Alvarez* factors); *United States v. Pavon-Andino*, No. CR 25-MJ-00022-TPO, 2025 WL 446143, at *2 (D. Colo. Feb. 10, 2025) (same); *cf. Spirea*, 2024 WL 4903759, at *5–6 (following *Figueroa-Alvarez* but not enumerating the four factors).

The Court declines to formally adopt a rigid set of factors in analyzing the § 3142(f)(2)(A) decision. That said, the factors outlined in *Figueroa-Alvarez* are instructive and consistent with the broad approach *White* embraced. Indeed, *White* implicitly weighed similar considerations in rejecting the government's arguments. *See White*, 2021 WL 2155441, at *12–14 (analyzing incentives, ability to flee, and prior compliance with court orders). This Court adopts the *White* approach while being mindful of the factors in *Figueroa-Alvarez* as informative but neither exhaustive nor determinative.

### III. ANALYSIS

Having established the legal framework, the Court must decide whether the United States met its burden of preponderant evidence that Rodriguez-Fuentes is a serious risk of flight entitling it to a detention hearing. If not, the analysis ends, and Rodriguez-Fuentes must be immediately released. If, however, the United States makes such a showing, the Court will turn to the analysis of the risk of nonappearance and the risk of danger under the BRA's § 3142(g) factors.

### A. WHETHER THE UNITED STATES HAS ESTABLISHED A BASIS FOR DETENTION

Rodriguez-Fuentes contends that his ties to the United States, prior history of court compliance, lack of evidence of past flight, and willingness to abide by release conditions weigh against a finding that there is preponderant evidence that he poses a serious risk of flight. The United States argued that Rodriguez-Fuentes presents a serious risk of flight, because his prior deportation, pending immigration proceedings (including an order of removal), extensive criminal history, history of noncompliance with legal obligations, lack of lawful employment, and own statements establish a strong incentive to flee. The Court evaluates Rodriguez-Fuentes's and the United States' positions below, and determines that the facts taken as a whole weigh in favor of finding by a preponderance of the evidence that Rodriguez-Fuentes poses a serious risk of flight pursuant to § 3142(f)(2)(A).

#### 1. Rodriguez-Fuentes's Argument

Rodriguez-Fuentes argues that his longstanding and substantial connections to Lexington, Kentucky undermine the government's assertion that he presents a serious flight risk. Rodriguez-Fuentes is a 32-year-old Mexican national who has

lived in the United States since he was 16. His brother and sister live in Lexington. Additionally, Rodriguez-Fuentes has a 13-year-old son, a United States citizen who attends school in Lexington. Community and family ties are key factors in determining flight risk. *See United States v. Santos-Flores*, 794 F.3d 1088, 1093 (9th Cir. 2015) (considering a defendant's family ties but ultimately finding them insufficient to overcome evidence of flight risk); *Pavon-Andino*, 2025 WL 446143, at *3 (holding that family ties, employment, and significant bond postings create multiple incentives to remain in the jurisdiction). Rodriguez-Fuentes emphasized the active role he occupies in his son's life. The Court acknowledges that a minor child provides a powerful incentive for Rodriguez-Fuentes to remain in Lexington and comply with any release conditions. His brother and sister are additional connections to Lexington.

Rodriguez-Fuentes also has a history of steady employment in Kentucky, although he lacks formal work authorization. This work history reflects a level of economic stability and integration that is inconsistent with someone likely to flee. Moreover, if released, Rodriguez-Fuentes proffered he has immediate employment available, further reducing any likelihood that he will abandon the jurisdiction. Courts recognize that employment prospects weigh against a finding of a serious flight risk. *Cf. Figueroa-Alvarez*, 681 F. Supp. 3d at 1142 (noting that "the absence of prospective employment and income may be probative of serious risk of flight").

In sum, Rodriguez-Fuentes's longstanding residence in Kentucky, his 13-year-old son and siblings in Lexington, and employment prospects here provide incentive

for him to stay in the jurisdiction and not evade proceedings in this Court. However, even in the face of these positive attributes, the United States presented sufficient evidence to (just barely) overcome its preponderance burden showing that Rodriguez-Fuentes presents a serious risk of flight.

### 2. United States' Argument

The United States argued that there are numerous facts indicating there is a serious risk Rodriguez-Fuentes will flee federal prosecution. Specifically, the United States pointed to the Rodriguez-Fuentes's pending state charges, the lengthy sentences he is facing, his history of criminality and untrustworthiness, his almost certain deportation, and his connections to Mexico.

Rodriguez-Fuentes was charged in state court with kidnapping, unauthorized use of a motor vehicle, and fourth-degree assault all stemming from a domestic violence incident with his current partner. [PSR at 3–4]. Those charges are still pending, but Rodriguez-Fuentes was released on state bond. [PSR at 4]. Per the United States, facing these charges would drive Rodriguez-Fuentes to flee. Several courts have recognized that the severity of potential punishment may influence a defendant's incentive to flee. *See United States v. Sagastume-Galicia*, No. 19-MJ-287 (BAH), 2020 WL 2486423, at *2 (D.D.C. Apr. 22, 2020) (noting defendant faced up to 10 years' imprisonment); *Figueroa-Alvarez*, 681 F. Supp. 3d at 1141–42 (D. Idaho 2023) ("Alien defendants facing sentences measured in years for violations of § 1326, to be followed by near certain deportation, have a far greater incentive to flee"); *Pavon-Andino*, 2025 WL 446143, at *3 (finding that a likely sentence of 8–12 months' imprisonment "weighs heavily in favor of release").

In 2015, Rodriguez-Fuentes was charged with manslaughter following a DUI accident that killed the passenger in his car. Federal authorities were prepared to deport Rodriguez-Fuentes following the resolution of that charge. Rodriguez-Fuentes appeared for all court appearances, served his time, was deported, and never fled—evidence, Rodriguez-Fuentes argues, that he would do the same here. The Court, however, is not convinced Rodriguez-Fuentes is in the same situation as he was in 2015. Rodriguez-Fuentes faces a maximum 20-year federal sentence for illegal reentry after an aggravated felony conviction. Additionally, he has serious, pending state felony charges. If convicted in federal and state court, the sentences could be imposed consecutively. Though potential punishment is insufficient by itself to justify detention under § 3142(f)(2)(A), it is a relevant consideration where, as here, the penalties could measure into multiple decades followed by deportation. Such "significant penalties provide a strong incentive to flee." *United States v. Shuklin*, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020).

The United States further cited Rodriguez-Fuentes's contacts in Mexico, namely his parents, as further evidence of his likelihood to flee. *United States v. El-Hage*, 213 F.3d 74, 80 (2d Cir.2000) (affirming district court determination that defendant was "quite capable of flight" where, inter alia, he had "extensive history of travel and residence in other countries."). However, other than when he was deported in 2020, Rodriguez-Fuentes has not returned to Mexico, and when he did, he immediately (and illegally) returned to Kentucky.

ICE has confirmed that Rodriguez-Fuentes's 2020 order of removal remains in effect. If released, ICE will have the option of immediately deporting Rodriguez-Fuentes. Rodriguez-Fuentes told ICE agents he fears returning to Mexico due to cartel violence and safety concerns.[3] The government argues this fear gives him a strong incentive to evade deportation. This presents a confusing contradiction of claims: according to the United States, Rodriguez-Fuentes will flee to his family in Mexico and, also, will flee elsewhere to avoid deportation to Mexico. Nonetheless, the United States is free to present alternative, albeit conflicting, possible risks of flight. While both narratives cannot be true simultaneously, the Court acknowledges that either could be true. The Court is particularly concerned, as noted below, that Rodriguez-Fuentes's stated fear of returning to Mexico is motivation to flee the jurisdiction to avoid deportation there.

This Court has previously opined, without finding, that the existence of a removal order "is certainly relevant and probative evidence of his risk of nonappearance under § 3142(e) and (g)" but "may not necessarily compel a finding that he also presents a risk of flight and that the United States is therefore entitled to a hearing under § 3142(f)(2)(A)." *Cobix-Espinoza*, 655 F. Supp. 3d at 597 n.5. The Sixth Circuit and others have uniformly held that the mere existence of a

---

[3] SA Austin testified that Rodriguez-Fuentes reported generalized safety concerns about his home country but did not provide specific allegations of persecution by the Mexican government or any organized group targeting him personally. SA Austin confirmed that Rodriguez-Fuentes has not yet had an asylum interview, as such proceedings would be triggered only after he is transferred back to ICE custody.

removal order or ICE detainer is insufficient, alone, to establish a serious risk of flight. *See United States v. Veloz-Alonso*, 910 F.3d 266, 269–70 (6th Cir. 2018) (emphasizing that the BRA and immigration analyses are distinct)*; Ailon-Ailon*, 875 F.3d at 1337 ("[A] risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based."); *Salgado*, 2020 WL 4747931, at *4 (holding that neither a serious risk of flight under § 3142(f)(2)(A) nor a risk of nonappearance under § 3142(e) can be established *per se* by an ICE detainer, even if removal might result in a nonvolitional failure to appear). The core inquiry, again, is whether there is a serious risk a defendant will *voluntarily* evade judicial oversight.[4]

The Court is reticent to impose a paradoxical standard that requires a defendant to demonstrate strong community ties while simultaneously treating those same ties as evidence of a heightened risk of flight to evade deportation. Here, however, the government has presented evidence that Rodriguez-Fuentes is facing almost certain deportation to a country he stated he is afraid to return to. Though the ICE detainer is not determinative of in the Court's analysis, it is one more factor

---

[4] The government cites *United States v. Ramirez-Vaca*, No. CR 5:21-020-DCR, 2021 WL 1741851, at *3 (E.D. Ky. May 3, 2021) (denying motion to revoke detention order in *United States v. Ramirez-Vaca*, 570 F. Supp. 3d 507 (E.D. Ky. 2021)). The undersigned recognizes he is undercutting his own opinion herein. In *Ramirez-Vaca*, the undersigned, and later district court, confused the volitional aspect inherit to risk of flight and the broader use of a risk of nonappearance. This confusion in *Ramirez-Vaca* is the cautionary tale warned about in *White* and one the Court hopes never to repeat. *White*, 2021 WL 2155441, at *9.

weighing towards finding the United States established serious risk of flight by preponderance of the evidence.

Finally, the United States repeatedly pointed to Rodriguez-Fuentes's criminal record as evidence of his dangerousness, reliability, and trustworthiness in obeying prior court mandates. Without question, this Court has serious concerns about Rodriguez-Fuentes's danger issues, but those are not yet before the Court. At the § 3142(f)(2)(A) juncture, the focus is solely on how the criminal history informs a possible serious risk of flight. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1141 (citing *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003)); *see also White*, 2021 WL 2155441, at *13. As mentioned, Rodriguez-Fuentes was previously convicted of manslaughter in state court. After that conviction, he was deported. Rather than respect the deportation orders of this country, Rodriguez-Fuentes illegally re-entered the United States and incurred new state charges for violent crimes. The government argues that Rodriguez-Fuentes's record is indicative of a lack of trustworthiness or reliability, and the Court agrees.

There is no evidence that Rodriguez-Fuentes has ever attempted to flee from law enforcement or evade prosecution, despite knowing that his prior offenses carried both criminal and likely immigration-related consequences. Nevertheless, obeying the laws of the United States has not been a top priority for Rodriguez-Fuentes up to this point, and the Court has no reasonable assurances that he will respect conditions of release, rather than flee the jurisdiction.

Rodriguez-Fuentes has many ties to the Eastern District of Kentucky that would discourage him from fleeing the jurisdiction, including his minor child, siblings, and stable employment. He does not present other significant risks of flight such as using substances or having substantial financial resources. Considering the parties' proffer, the testimony of SA Austin, and the PSR, the Court finds the United States met its preponderance burden that there is a serious risk Rodriguez-Fuentes will flee the jurisdiction. Although no one fact is determinative, when measured as a whole, Rodriguez-Fuentes's pending state and federal prosecutions (with the attendant risks of very lengthy consecutive sentences), immigration removal order that will likely deport him to a country he says he does not want to return to, his family in Mexico, and his prior disregard for the laws of the United States, including (and especially) its immigration orders, are sufficient to satisfy § 3142(f)(2)(A) and reach the question of whether detention is appropriate.

## B.     WHETHER THE UNITED STATES HAS PROVEN DETENTION IS NECESSARY

Having found that the government can move for detention under § 3142(f)(2)(A), the Court turns to whether the government has met its burden to show that either Rodriguez-Fuentes is a risk of nonappearance by preponderant evidence, or that Rodriguez-Fuentes's release would pose a risk of danger to the community by clear and convincing evidence. On both inquiries, the Court finds that the government has met its burden and that the factors under § 3142(g) demand detention.

### 1. **Risk of Nonappearance**

First, the government has shown by preponderant evidence that Rodriguez-Fuentes's release will present an irremediable risk of non-appearance. As with serious risk of flight, nonappearance-based detention also requires preponderant evidence. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Indeed, "'risk of flight' appears to be a subcategory of 'risk of non-appearance.'" *White*, 2021 WL 2155441, at *10 (quoting *Gouldin*, *supra*, at 683). It follows, where the government has shown serious risk of flight by preponderant evidence, the government may also show a defendant is a risk of nonappearance by preponderant evidence.[5]

SA Austin testified that upon his release, ICE will initiate removal proceedings due to 2020 order of removal being in place. Rodriguez-Fuentes's non-citizen status is not determinative of his risk of non-appearance. *See, e.g., United States v. Veloz-Alonso*, 910 F.3d 266, 269–70 (6th Cir. 2018) (emphasizing that the BRA and

---

[5] Notably, while the standard for demonstrating that a detention hearing is permitted under § 3142(f)(2)(A) and the standard for showing detention is warranted based on the defendant's risk of nonappearance under § 3142(e) are the same, the analyses are very different. Under subsection (f)(2)(A), the Court must simply find by a preponderance of evidence that the defendant poses a serious risk of flight. Under subsection (e), however, the Court must find by a preponderance of evidence that available conditions of release can reasonably ensure the defendant's future appearance at court proceedings, despite the defendant's risk of nonappearance or flight. Thus, even when the United States can establish by a preponderance of evidence that a defendant poses a serious risk of flight under subsection (f), the analysis under subsection (e) at the detention hearing is not a foregone conclusion. The Court may still find that conditions of release can sufficiently mitigate the risk of flight (a type of nonappearance).

immigration analyses are distinct); *United States v. Adomako*, 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001) (emphasizing that even "a deportable alien" is not categorically "barred from release" under the BRA, but noting that immigration is still a factor to weigh in the flight analysis "to the extent that the government chooses to present it in support of its motion for detention"). However, "an outstanding order of removal would be strong evidence of likely nonappearance." *United States v. Lucas*, No. 4:08CR3139, 2008 WL 5392121, at *3 (D. Neb. Dec. 19, 2008). Indeed, if ICE initiated removal proceedings and Rodriguez-Fuentes was deported, he would not be able to appear for future Court proceedings. The Court, thus, finds that there is preponderant evidence that he will not appear for court if released, despite any conditions the Court imposes.

### 2. Risk of Danger

As previously noted, the Court has serious concerns regarding Rodriguez-Fuentes's dangerousness. Indeed, the United States has shown by clear and convincing evidence that Rodriguez-Fuentes's release poses an irremediable danger to the community under the BRA framework, as explained below.

#### a. *Nature and Circumstances of the offense*

The first factor under the BRA is the "nature and circumstances of the offense charged[.]" 18 U.S.C. § 3142(g)(1). Here, Rodriguez-Fuentes is charged with illegal reentry following an aggravated felony, specifically under 8 U.S.C. § 1326(b)(2), which carries a maximum 20-year sentence. While illegal reentry alone is not inherently indicative of danger, the underlying felony justifying the (b)(2) enhancement—driving under the influence and causing a fatal crash—directly implicates public

safety concerns. This factor is, therefore, neutral as an indicator of his dangerousness.

### b. *Weight of the Evidence of Dangerousness*

The second factor—the weight of the evidence of a person's dangerousness—goes only to the likelihood that the defendant will pose a danger to the community; it is not a pretrial determination of guilt. *Stone*, 608 F.3d at 948. In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(j).

Here, the Court considers SA Austin's testimony confirming Rodriguez-Fuentes's 2020 removal order remains in effect, alongside the serious nature of the felony underlying his § 1326(b)(2) charge. The PSR details that while intoxicated, Rodriguez-Fuentes veered into the emergency lane, colliding with an abandoned vehicle and trapping his passenger. Minutes later, another vehicle struck the wreckage, killing the trapped passenger. This evidence underscores the severity of his prior offense and weighs in favor of detention based on danger.

### c. *History and Characteristics of the Person*

The third factor under the Bail Reform Act considers Rodriguez-Fuentes's history and characteristics. *See* 18 U.S.C. § 3142(g)(3). As previously discussed, he has lived in the United States for more than half his life, with exclusive ties to Lexington. He is actively involved in his 13-year-old child's life and has maintained steady employment since arriving in the United States. The PSR does not indicate a substance use disorder, but his history raises concerns regarding alcohol-related

behavior. His 2018 manslaughter conviction stemmed from driving while intoxicated, resulting in the death of his passenger.

More troubling are his current state charges, which suggest a pattern of violence. In Fayette Circuit Court, Rodriguez-Fuentes faces charges of kidnapping, unauthorized use of a motor vehicle, and assault. The PSR describes an incident where Lexington police responded to a domestic violence call. [PSR at 4]. The victim reported that Rodriguez-Fuentes, intoxicated, locked her inside their home, took her phone to prevent her from seeking help, and physically assaulted her whenever she attempted to escape. After she finally broke free, Rodriguez-Fuentes allegedly dragged her back inside, punching her in front of neighbors, who contacted the police. Law enforcement observed visible injuries, including scratches and bruising on her face, a scraped knee, and reported pain in her hip and shoulder.

Later that same day, Rodriguez-Fuentes was arrested again, this time for allegedly taking the victim's vehicle by intimidation. The PSR states he threatened to kidnap her, forcing her to surrender the keys. A domestic violence order ("DVO") was also filed against him on September 27, 2024. [PSR at 4]. While he is entitled to the presumption of innocence relative to his state charges, the allegations appear corroborated by witness testimony and physical evidence and are strongly indicative violent behavior. The Court finds these facts highly concerning, and they weigh heavily in favor of detention based on danger.

### d.  *Nature and Seriousness of Danger*

The fourth and final factor under the BRA considers "the nature and seriousness of the danger to any person or the community that would be posed by the

person's release." 18 U.S.C. § 3142(g)(4). As noted above, Rodriguez-Fuentes has encountered the criminal justice system multiple times in association with alcohol use. Most concerning is the recent domestic violence incident, where he allegedly restricted his partner's movement and physically assaulted her when she attempted to escape. While unrelated to the instant charge, the Court may consider this conduct in assessing his danger to the community. *See Stone*, 608 F.3d at 953 (citing *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990)). Indeed, "[a] willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others." *Quartermaine*, 913 F.2d at 917. This factor, accordingly, weighs heavily in favor of dangerousness.

Viewing all these factors together, the Court concludes that the United States has demonstrated by clear and convincing evidence that Rodriguez-Fuentes poses a danger to the community. Furthermore, the Court identifies no conditions that will reasonably assure the safety of the community.

### IV. CONCLUSION

The government's burden is preponderant evidence—to show it is more likely than not that Rodriguez-Fuentes poses a *serious risk of flight*. Based on the evidentiary record, the Court finds that the government established preponderant evidence sufficiently serious to warrant a detention decision under § 3142(f)(2)(A). And under § 3142(e), the Court further finds the United States established that Rodriguez-Fuentes is both a risk of nonappearance as well as a risk of danger to the community.

Accordingly, the Court **GRANTS** the United States' oral detention motion. As the BRA mandates in this case, Rodriguez-Fuentes shall remain in custody pending trial.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 5th of March, 2025.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY